UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA
and STATE OF MICHIGAN,

                Plaintiffs,

*ex rel.* MICHAEL ANGELO and
MSP WB, LLC,

                Plaintiffs/Relators,

v.

ALLSTATE INSURANCE CO.,
et al.,

                Defendants.

_____/

Case No. 2:19-cv-11615

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
GRANTING IN PART MOTION TO DISMISS [77] AND
GRANTING IN PART MOTION FOR JUDICIAL NOTICE [78]**

Relator Michael Angelo brought the present False Claims Act ("FCA") action

against three insurance companies on behalf of the United States and Michigan. ECF

1. After the Government declined to intervene, ECF 12 (under seal), Relator Angelo

moved for leave to file a second amended complaint, ECF 32. The Court granted the

motion. ECF 35. The second amended complaint added new parties, including: thirty-

two insurance entities[1] ("insurer Defendants"); an insurance service provider, ISO;

and a co-Relator, MSP WB. ECF 38 (under seal). The Relators sued on behalf of the

_____

[1] All insurer Defendants are either Allstate companies or an Allstate "related
entit[y]." ECF 41, PgID 1026–32.

1

federal Government, ten States, and Puerto Rico. *Id.* (under seal). Still, the federal, State, and Puerto Rico Governments jointly declined to intervene in the case. ECF 39 (under seal). The Relators then filed the unsealed second amended complaint. ECF 41. The insurer Defendants jointly moved for judicial notice, ECF 78, and to dismiss the case, ECF 77.[2] The parties briefed the motions, and the Court held a motion hearing on July 27, 2022. For the reasons below, the Court will grant in part the motion for judicial notice, ECF 78, and will grant in part the motion to dismiss, ECF 77.

## BACKGROUND[3]

Under the Medicare Secondary Payer statute, 42 U.S.C. § 1395y(b)(2), *et seq.*, private insurers are the "primary payers" of treatment for individuals who are covered by both Medicare and private insurance. *Bio-Med. Applications of Tenn., Inc. v. Cent. States Se. & Areas Health & Welfare Fund*, 656 F.3d 277, 278 (6th Cir. 2011). And Medicare is the "secondary payer" of the individual.[4] *Id.* Medicare can still make a "conditional payment" for healthcare "if a primary plan . . . has not made or cannot reasonably be expected to make payment with respect to such item or service promptly." § 1395y(b)(2)(B)(i). When Medicare covers a conditional payment, the

---

[2] Defendant ISO separately moved to dismiss. ECF 89. This Order does not resolve that motion.

[3] Because the Court must view all facts in the light most favorable to the nonmoving party, *see Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008), the Court's recitation does not constitute a finding or proof of any fact.

[4] "Similar to the [Medicare Secondary Payer] statute, federal regulation ensures that Medicaid is secondary to other available sources of insurance benefits." ECF 41, PgID 1051 (citing 42 C.F.R. § 433.139).

primary plan must reimburse Medicare if the "primary plan has or had a responsibility to make payment with respect to such item or service." § 1395y(b)(2)(B)(ii).

A primary plan (private insurance carrier) is also obligated to inform Medicare when it discovers that it is a primary payer of a Medicare beneficiary's health expenses. ECF 41, PgID 1043. Congress enacted the self-reporting obligation in Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007. *Id.* To satisfy the reporting obligation, primary plans must "(1) determine whether an injured insured is eligible for coverage and is enrolled in Medicare; and, if so, (2) report the insured's identity and claims to [the Centers for Medicare and Medicaid Services]." *Id.* at 1044 (citing Section 111).

The Relators alleged that the insurer Defendants here "do not report pursuant to Section 111"; "they routinely and intentionally submit incomplete or inaccurate reports. *Id.* at 1063. As a result, the insurer Defendants, as primary payers, either "fail to provide government payers with notice of their primary payer obligations" or "the [p]rimary [p]lans are certain of their obligation to make payment, but they deny all liability regarding the services." *Id.* at 1021.

The Relators offered three "exemplars to demonstrate the reporting failures alleged" in the amended complaint. *Id.* at 1069. The first was Relator Angelo's exemplar. *Id.* at 1069–71. The exemplar detailed that Relator Angelo operates several medical facilities that provide "treatment to auto accident victims who are insured with [p]rimary [payers]." *Id.* at 1069. But his "facilities do not accept Medicare or

3

Medicaid insurance." *Id.* Relator Angelo noted that he "acquired direct knowledge that [p]rimary [p]lans do not provide a medical card for auto-insured [beneficiaries] to use at pharmacies to purchase their medication." *Id.* So the beneficiaries insured by both Medicare and a primary payer must rely on Medicare to pay for the medication, "even though a [p]rimary [p]lan was obligated to provide primary payment." *Id.* at 1070. And Relator Angelo stated that he "has direct knowledge" of times when primary payers refused to cover their beneficiaries' treatment at his medical facilities. *Id.* The beneficiaries therefore were required to seek treatment elsewhere—at a facility that accepted Medicare or Medicaid payments. *Id.* As Relator Angelo put it, the primary plans skirted their obligation to "provide payment for the accident-related medical expenses of government healthcare program beneficiaries." *Id.* at 1071 (cleaned up).

The second exemplar was of E.A., a Medicare and Allstate Insurance Group beneficiary. *Id.* at 1071–72. E.A. was injured in an automobile accident that should have been covered by the Allstate Insurance Group. *Id.* at 1071. But Medicare provided payment for most of his accident-related medical expenses. *Id.* According to E.A., "Allstate Insurance Group never reported E.A.'s identity and claims" under Section 111 "and failed to make primary payments" for E.A. *Id.* In turn, "Medicare paid for prescription medication that Allstate Insurance Group was obligated to pay." *Id.* at 1072.

The last was Relator MSP WB's exemplar. *Id.* at 1089–90. The exemplar detailed an injury to an insured, "K.S.," and similarly explained how Allstate,

although being "the primary payer responsible for payment and/or reimbursement of K.S.'s accident-related medical expenses," failed to reimburse conditional payments made by a Medicare Advantage Organization.[5] *Id.*

In all, the Relators claimed that the exemplars showed that "Defendants circumvent their obligations to pay for reasonable and necessary medical bills, at the expense of [g]overnment [h]ealthcare [p]rograms." *Id.* Defendants' conduct of "routinely submit[ting] false reports" thus "cause[s] the government[] to pay monies and sustain financial loss at an alarming rate," and "impedes the [Government's] ability to recover on payments made." *Id.*

## LEGAL STANDARD

The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett*, 528 F.3d at 430.

---

[5] "The [Medicare Secondary Payer] statute 'bars any Medicare payment—including [a Medicare Advantage Organization] payment—when there is a primary plan.'" ECF 41, PgID 1043 (quoting *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1237 (11th Cir. 2016)). And a failure to reimburse a Medicare Advantage Organization affects the Centers for Medicare and Medicaid Services. *See generally* ECF 41, PgID 1042–43.

But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss. *Winnett v. Caterpillar*, *Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## DISCUSSION

To start, he Court will explain why the Relators have standing to sue. After, the Court will detail why the first-to-file bar does not apply to the case. And last, the Court will grant in part Defendants' motion to dismiss the case based on the public disclosure bar.

I.   <u>Standing</u>

Defendants argued that the Relators failed to establish standing for two reasons. First, "Allstate Insurance Group," an alleged insurer in one of the exemplar claims, is neither a named Defendant nor a legal entity. ECF 77, PgID 1236. And the only other entity alleged of wrongdoing in the Relators' exemplars was "Allstate Insurance Company." *Id.* Thus, Defendants argued that the Relators failed to establish standing as to all Defendants other than Allstate Insurance Company. *Id.* Second, because most Defendants did "not even write the type of insurance policies at issue in th[e] case," Defendants contended that the Relators could not show any injury traceable to those Defendants. *Id.* Defendants supported the arguments with

a declaration[6] from a "Claims Support and Design Manager." ECF 77-1, PgID 1240–42.

Standing is established when three elements are met. *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). First, a qui tam plaintiff must show that he "suffered an injury in fact," that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations removed). Second, a qui tam plaintiff must show that there is a "causal connection between the injury and the conduct complained of" that is "fairly traceable to the challenged action of the defendant." *Id.* (cleaned up). And third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks and quotation omitted). Last, a qui tam plaintiff "bears the burden of establishing these three elements." *Id.*

The Relators have standing to sue Defendants. At their core, Defendants' arguments are best framed as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Indeed, both of Defendants' arguments are nearly identical to their substantive argument that the Relators failed to meet Rule 9(a)'s specificity requirement by "lump[ing] all Defendants together based on two exemplars." ECF 77, PgID 1208–10

---

[6] The Court may rely on declarations to resolve issues of standing without converting a Rule 12(b)(6) motion into one for summary judgment. *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915–16 (6th Cir. 1986) (citation omitted).

(footnote omitted). *Compare id.* at 1236, *and* ECF 87, PgID 2653–54, *with* ECF 77, PgID 1208–10.

What is more, the Relators established the three standing elements. Relator MSP WB allegedly has "direct knowledge of tens of thousands of instances wherein the [Defendants] failed to report their primary payer responsibility causing government health programs to reimburse for the beneficiaries' accident-related medical expenses." ECF 41, PgID 1068. And the Relators claimed that Defendants "systematic[ally] fail[ed] to completely or accurately satisfy Section 111's reporting requirements." *Id.* at 1018. Taken as true, the Relators established a fraud injury on the United States due to Defendants' failure to satisfy Section 111's reporting requirements. *Stevens*, 529 U.S. at 773–74. One Relator even has "direct knowledge" of Defendants' reporting failures, ECF 41, PgID 1068, and can trace Defendants to the alleged fraud, *Stevens*, 529 U.S. at 771. And a favorable decision would likely redress the alleged fraud injury. *See id.* at 773–74. Because the Relators have standing, the Court will deny the Defendants' motion in regard to standing.

## II. First-to-File Bar

Defendants also argued that the Court should dismiss Relator MSP WB's claims under the FCA's first-to-file bar. ECF 77, PgID 1234–35. The first-to-file bar states, "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). Relator MSP WB joined the litigation when Relator Angelo filed the second amended complaint. ECF 41. Defendants

contended that Relator MSP WB could not be added as a co-Relator through a Rule 15 pleading amendment without violating § 3730(b)(5). ECF 77, PgID 1234–35. But the Relators claimed that "the addition of relators via amendment does not run afoul of the first-to-file rule." ECF 86, PgID 2084 (citation omitted). In short, the plain text of the statute favors the Relators' reading, and Subsection (b)(5) does not apply here.

The Sixth Circuit has not addressed whether Subsection (b)(5) bars adding a relator through a Rule 15 amendment. But the Third and Tenth Circuits have explicitly acknowledged that adding a relator through an amendment does not implicate Subsection (b)(5).[7] Those Circuits have read the word 'intervention' narrowly—as the technical term used in Rule 24—rather than broadly—to bar any form of joinder. *Plavix Mktg.*, 974 F.3d at 234; *Precision II*, 31 F.3d at 1017. The Court agrees with the narrow reading.

First, Subsection (b)(5)'s plain text bars only two actions by non-government parties: one, a person may not intervene; and two, a person may not bring a factually related action. But "[i]n normal civil litigation, there are three ways for nonparties with interests relevant to a suit to become parties to a suit." *Plavix Mktg.*, 974 F.3d at 233. Non-parties "can intervene in the existing suit," "[t]hey can file their own

---

[7] For example, *In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 974 F.3d 228, 236 (3d Cir. 2020) ("The [FCA's] first-to-file bar stops new relators from intervening in other parties' suits or bringing their own separate suits based on the same facts. Yet it does not bar parties from amending a complaint to add, remove, or swap relators."); *United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1017 (10th Cir. 2017) ("[W]e held that two new relators didn't 'intervene' in violation of § 3730(b)(5) when the original plaintiff added the relators through a Rule 15 amendment.") (citing *United States ex rel. Precision Co. v. Koch Indus., Inc.* (*Precision II*), 31 F.3d 1015, 1017–18 (10th Cir. 1994)).

related suits based on the same facts," "[o]r they can be added to the exiting suit by the court or the existing parties." *Id.* Subsection (b)(5) does not bar the third option. And the Court will not broaden the statute's text by inserting words Congress chose to omit. *See Plavix Mktg.*, 974 F.3d at 233 ("If Congress had wanted the first-to-file bar to reach more broadly, it would have said so. But it chose a 'narrower' term (intervention), and we must 'respect, not disregard,' that choice.") (quoting *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067 (2018)); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012) (discussing the omitted-case canon and stating that "[n]othing is to be added to what the text states or reasonably implies (casus omissus pro omisso habenendus est)"); *cf. Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020) (citation omitted).

Next, "the normal rule of statutory construction dictates that when Congress uses identical words in two different places in a statute, the words are usually read to mean the same thing in both places." *Guillermety v. Sec'y of Educ.*, 241 F. Supp. 2d 727, 732–33 (E.D. Mich. 2022) (citing *Comm'r of Internal Revenue v. Lundy*, 516 U.S. 235, 250 (1996)). The term "intervene" appears thrice in § 3730. In all three instances, "intervene" refers to an action the Government may elect to take.[8]

In contrast, addition of a party through a Rule 15 amendment involves a different procedural mechanism. After all, an already-existing party brings a new

---

[8] § 3730(b)(2) ("The *Government may elect to intervene* and proceed with the action . . . ."); § 3730(b)(5) ("[N]o person other than the *Government may intervene* . . . ."); § 3730(c)(3) ("[T]he court . . . may nevertheless *permit the Government to intervene* at a later date . . . .") (all emphases added).

party into the case under Rule 15 rather than the new party bringing itself into the case. *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1504 (3d ed. 2022) ("Litigants also have been allowed to supplement their original pleadings to include new parties when events make it necessary to do so.") (citing *United Pub. Workers of Am. v. Local No. 312*, 94 F. Supp. 538, 542 (E.D. Mich. 1950)). And indeed, when the Government intervenes under § 3730(b)(5), it need not consult a relator. *See* § 3730(b)(2). It need only "decide whether it will 'elect to intervene and proceed with the action.'" *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 932 (2009) (quoting § 3730(b)(2), (b)(4))).

To be sure, the Federal Rules of Civil Procedure have dedicated Rule 24 to govern "intervention." And Congress twice cited the Federal Rules of Civil Procedure in § 3730(b)(2)–(3). It makes little sense why Congress would have used Rule 24's plain procedural term yet intended "intervene" to include all kinds of joinder under the Civil Rules. § 3730(b)(2)–(3) (citing Fed. R. Civ. P. 4); *see also Intervention*, Black's Law Dictionary (9th ed. 2009) ("The entry into a lawsuit by a third party who, despite not being named a party to the action, has a personal stake in the outcome.") (citing Fed. R. Civ. P. 24).

Plus, the Sixth Circuit has clarified that Subsection (b)(5) "unambiguously establishes a first-to-file bar, preventing *successive* plaintiffs from bringing related actions based on the same underlying facts." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 971 (6th Cir. 2005) (emphasis added) (citing *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001)). It follows that the bar

11

against nonparties "bring[ing] a related action based on the facts underlying the pending action" applies to successive Relators in separate actions, rather than co-Relators in the same action. *See* § 3730(b)(5).

Last, the best case that supports Defendants' reading suffers from flawed analytical reasoning. *United States ex rel. Fry v. Guidant Corp.*, No. 3:03-cv-0842, 2006 WL 1102397 (M.D. Tenn. Apr. 25, 2006); ECF 77, PgID 1234–35; ECF 87, PgID 2664–65. There, although the *Fry* court "agree[d] with the straightforward, exception-free interpretation of Section 3730(b)(5) adopted by the Fourth and Ninth Circuits," those Circuits did not address whether a Rule 15 amendment falls within the first-to-file bar. *Fry*, 2006 WL 1102397, at \*6 (citing *Hughes Aircraft Co.*, 243 F.3d at 1187 and *United States ex rel. LaCorte v. Wagner*, 185 F.3d 188, 191 (4th Cir. 1999)). Rather, the Fourth Circuit barred two nonparties who sought "to intervene in a qui tam action brought by two other individuals." *LaCorte*, 185 F.3d at 190–91. Unlike the present case, no party in the Fourth Circuit litigation sought to be added through a Rule 15 amendment. *See id.* And the Ninth Circuit unremarkably concluded—like the Sixth Circuit—that Section "3730(b)(5)'s plain language unambiguously establishes a first-to-file bar, preventing *successive* plaintiffs from bringing related actions based on the same underlying facts." *Hughes Aircraft Co.*, 243 F.3d at 1187 (emphasis added) (collecting cases); *e.g.*, *Walburn*, 431 F.3d at 971. Again, no relator in the Ninth Circuit case had sought to add new relators through Rule 15. *Fry*'s reliance on those cases was therefore misplaced, and the Court will not adopt its reasoning.

In sum, § 3730(b)(5)'s plain text does not affect a Rule 15 amendment. The first-to-file bar does not bar Relator MSP WB's claims.

III.   Public Disclosure Bar

The public disclosure bar in "[t]he FCA bars qui tam actions that merely feed off prior public disclosures of fraud." *United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 843 (6th Cir. 2020), *aff'g* 386 F. Supp. 3d 884 (N.D. Ohio 2019) (citations omitted); *see* § 3730(e)(4)(A)–(B). A defendant may assert the public disclosure bar as a reason to dismiss a complaint under Rule 12(b)(6). *United States ex rel. Advocs. for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 433 (6th Cir. 2016) (affirming dismissal based on the public disclosure bar under Rule 12(b)(6)).[9]

And the Court may take judicial notice of government documents and news articles attached to a Rule 12(b)(6) motion to dismiss. *United States ex rel. Rahimi v. Rite Aid Corp.*, No. 2:11-cv-11940, 2019 WL 10374285, at *2 (E.D. Mich. Dec. 12, 2019) (Murphy, J.) (citation omitted), *aff'd*, 3 F.4th 813 (6th Cir. 2021). Federal Rule of Evidence 201(b) also allows the Court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's jurisdiction; or (2) can be accurately and readily determined from sources whose

---

[9] At the motion hearing, the Court asked the parties to focus on the public disclosure bar. Counsel for the Relators strenuously argued that the Court must first decide the merits of the case under Rule 12(b)(6) before it may dismiss the case on public disclosure grounds. The argument is unavailing given Sixth Circuit precedent, *see, e.g., id.*, and the statute's plain text, 31 U.S.C. § 3730(e)(4) ("The Court *shall dismiss* an action . . . if substantially the same allegations or transactions as alleged in the action . . . were publicly disclosed.") (emphasis added).

accuracy cannot be reasonably questioned." To that end, taking judicial "notice of public documents is proper only for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 894 F.3d 235, 245 (6th Cir. 2018) (quotation marks and quotation omitted).

To assess whether the public disclosure bar precludes an FCA claim, the Court must apply a three-part test. *Rahimi*, 3 F.4th at 823. First, the Court must "ask whether, before the filing of the qui tam complaint, there had been any public disclosures from which fraud might be inferred." *Id.* (quoting *United States ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 522 (6th Cir. 2020)). Second, the Court must "assess how closely related the allegations in the complaint are to those in the public disclosures." *Id.* (citing *Maur*, 981 F.3d at 522). And if the first two prongs are met, then the Court must "ask whether the qui tam plaintiff is nevertheless an original source of the information." *Id.* (italics omitted) (citing *Maur*, 981 F.3d at 522). The Court will first resolve Defendants' motion for judicial notice. After, the Court will address each public disclosure prong in turn.

A.    *Motion for Judicial Notice*

To determine whether the public disclosure bar applies here, the Court will take judicial notice of a 2017 news article and case filings attached to Defendant's motion for judicial notice. ECF 78-1 (index of exhibits); ECF 78-10 (Law360 2017 Article); ECF 78-28 (*Takemoto* amended complaint); ECF 78-29 (*Hayes* amended complaint).

14

The Relators pushed two arguments for why the Court should not take judicial notice of the documents. First, "[n]one [of the documents] are integral to Relators' claims," and therefore cannot be used "to decide disputed factual issues." ECF 85, PgID 1640. Second, Defendants did not meet their burden under Federal Rule of Evidence 201. *Id.* at 1639. The arguments are unpersuasive.

Defendants have met their burden under Federal Rule of Evidence 201(b). Although the Relators argued that Defendants failed to address whether the exhibits' contents and significance are in dispute, ECF 85, PgID 1644–47, Defendants did not submit the documents for the truth of the matters asserted in them. Rather, analysis of the documents may reveal that the information alleged in the Relators' complaint was already publicly known. ECF 88, PgID 2669, 2672. Defendants therefore did not need to address whether the *contents* of the exhibits are disputed. To be clear, the relevant question for the public disclosure bar is whether "substantially the same allegations or transactions as alleged in the action or claim were publicly *disclosed*," § 3730(e)(4)(A) (emphasis added), not whether the public disclosures were *truthful*. *See also United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, No. 5:13-cv-2145, 2015 WL 7575937, at *7 (N.D. Ohio Nov. 25, 2015) (collecting cases).

Moreover, the "significance" of the documents (whether the documents show "a public disclosure within the meaning of [§ 3730(e)(4)]"), ECF 85, PgID 1646, is a

merits issue. And the Court need not decide the significance of the documents' contents to judicially notice them. *Id.*[10]

What is more, the documents feature readily available information. Still, the Relators' contended that the information in seven exhibits[11] cannot be considered "readily available" because they are "blocked behind a 'paywall'" and "only accessible to subscription-paying customers." ECF 85, PgID 1648. The argument lacks merit. Based on the Court's research and the parties' briefing, no Sixth Circuit authority has ever held that subscription-based news media cannot produce "readily available" information. *See generally Mich. State A. Philip Randolph Inst. v. Johnson*, No. 16-cv-11844, 2016 WL 4267828, at *4 (E.D. Mich. Aug. 15, 2016) (judicially noticing national, subscription-based sources "such as the Wall Street Journal and the Washington Post").

The Relators also argued that Defendants failed to show how the documents are "relevant or necessary to resolve the issues before the Court" or show how the documents "reveal all of the essential elements of [the] Relators' fraud allegations." ECF 85, PgID 1649–50. The argument lacks logical discipline. The threshold question is merely whether the Court should judicially notice Defendants' exhibits. It is

---

[10] In support, the Relators cited three cases unrelated to the FCA that do not discuss the public disclosure bar. ECF 85, PgID 1646–47. In those cases, the parties that sought to have the documents admitted wished to use the documents' *contents* to their advantage, rather than merely show that public information existed. *See Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, No. 3:13-CV-82, 2021 WL 863203, at *3–4 (W.D. Ky. Mar. 8, 2021); *Jones v. Prudential Sec., Inc.*, 534 F. Supp. 3d 839, 841–43 (E.D. Mich. 2020); *MacDonald v. City of Detroit*, 434 F. Supp. 3d 587, 600 n.4 (E.D. Mich. 2020) (Cleland, J.). The cases are therefore unpersuasive here.
[11] Relevant here is Exhibit 9. *See* ECF 85, PgID 1648 n.3.

irrelevant whether the documents actually prove that the public disclosure bar applies.

Beyond that, news articles (specifically, Exhibit 9) are relevant to the public disclosure question because they bear on whether the allegations in the amended complaint were publicly disclosed. *See generally* ECF 78-10. Whether the documents show that the Relators' allegations ultimately fail on the merits is a separate question. *See Rahimi*, 3 F.4th at 824.

And the complaints (Exhibits 27 and 28) are relevant because they allege similar FCA claims about violating Medicare Secondary Payer rules. *See* ECF 41, PgID 1033; ECF 78-28, PgID 1407; ECF 78-29, PgID 1489; *see also Clark v. Stone*, 998 F.3d 287, 297 n.4 (6th Cir. 2021) ("Courts may take judicial notice of the proceedings of other courts of record.") (citation omitted).

In brief, to resolve the present motion, the Court will take judicial notice of Exhibits 9, 27, and 28. *See* ECF 78-10; ECF 78-28; ECF 78-29. The Court will therefore grant the motion for judicial notice, ECF 78, in part.

### B.   *First Prong of Public Disclosure Analysis*

"A disclosure is public if it appears in the news media or is made in a criminal, civil, or administrative hearing, or in a congressional, administrative, or Government Accounting Office report, audit, or investigation." *Rahimi*, 3 F.4th at 823 (cleaned up); *see also* 31 U.S.C. § 3730(e)(4)(A). And "publicly disclosed documents need not use the word 'fraud,' but need merely to disclose information that creates 'an inference of impropriety.'" *Rahimi*, 3 F.4th at 823 (quotation omitted). "[A] public

disclosure can also be piecemeal so long as the multiple sources of information reveal the allegation of fraud and its essential elements." *Id.* at 824.

Defendants argued that two qui tam cases (*United States ex rel. Hayes v. Allstate Ins. Co.*, No. 1:12-cv-01015, ECF 21 (W.D.N.Y. Apr. 14, 2014) and *United States ex rel. Takemoto v. Ace Am. Ins. Co.*, No. 1:11-cv-00613, ECF 170 (W.D.N.Y. Oct. 31, 2014)) filed—and unsealed—before the present action publicly disclosed the Relators' allegations. ECF 77, PgID 1224; *see* ECF 78-28; 78-29. The Relators did not dispute that the two cases are "public" under the statute; instead, they countered only that the cases could not have put the Government on notice of the allegations from the present case. *Id.* at 2075–76. In particular, the Relators reasoned that the cases are "not public disclosures under the amended statute" given that they were dismissed "because the relators proffered nothing more than a theory of fraud that lacked plausible facts to support the allegations." ECF 86, PgID 2075. The Relators also asserted that "stale claims are not public disclosures." *Id.* at 2079. Both arguments are oversold.

First, the Relators cited no authority that stated cases with substantially similar allegations can still be inadequate under the public disclosure doctrine because they were dismissed for failure to state a claim. *See id.* at 2075–76. The Relators believed since cases that are "insufficient under Rule 9(b)," *id.* at 2075, may not bar a successive filing under the first-to-file bar, *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 973 (6th Cir. 2005), the same reasoning should apply to the public disclosure bar, ECF 86, PgID 2075–76.

But the Court will not retrofit *Walburn*'s first-to-file bar reasoning into a bright-line rule for scrutiny of the public disclosure bar. As a textual matter, the public disclosure bar's text fails to distinguish between meritorious and unmeritorious claims. *See* § 3730(e)(4). And, as a practical matter, the reasoning conflicts with the FCA's "general purpose of encouraging genuine whistleblower actions while snuffing out parasitic suits." *Holloway*, 960 F.3d at 851 (citation omitted). A suit may still be parasitic when it follows substantially similar claims—meritorious and unmeritorious alike.

Second, the cases that the Relators cite do not create a limitations period on public disclosure sources. *See* ECF 86, PgID 2079–80 (citing *Maur*, 981 F.3d at 528 and *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 919 (6th Cir. 2017)). *Ibanez* noted that when the defendants agree to cease fraudulent conduct, "the mere resemblance of" allegations describing "with particularity post-agreement, improper [conduct]" by the defendants "to a scheme resolved years earlier is not by itself enough to trigger the public disclosure bar." 874 F.3d at 919. Those facts differ from those in dispute here because no party has suggested that Defendants have resolved allegations of fraudulent conduct like those raised by the Relators. And *Maur* explained that relators do not "add anything material to the prior problematic procedures already disclosed" when their "allegations are neither novel nor so removed from the resolved conduct." 981 F.3d at 528 (cleaned up).

Based on the Court's research, the Sixth Circuit has never announced a standard that delineates when the public disclosure bar may no longer apply based

on a case's age. And the Sixth Circuit has affirmed a dismissal[12] under the public disclosure bar based on lawsuits[13] that were unsealed eleven years before the amended complaints were filed in a case.

In the end, *Takemoto* and *Hayes* were both unsealed in 2014 and the amended complaints were also filed in 2014. *Takemoto*, No. 1:11-cv-00613, ECF 22 (W.D.N.Y. Apr. 3, 2014)) (order unsealing case); *Hayes*, No. 1:12-cv-01015, ECF 16 (W.D.N.Y. Mar. 20, 2014) (order unsealing case); ECF 78-28, PgID 1479 (*Takemoto* amended complaint); ECF 78-29, PgID 1608 (*Hayes* amended complaint). The Relators filed the present amended complaint in 2021. Even if there were a limitations period applicable to the public disclosure bar, a seven-year gap is permissible under *Holloway*.

At any rate, both cases are "public" under the first prong. Section 3730(e)(4)(A)(i) provides that an action is public if it was disclosed "in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party." The Government declined to intervene in both *Hayes* and *Takemoto*. *Hayes*, No. 1:12-cv-01015, ECF 15 (W.D.N.Y. Mar. 14, 2014); *Takemoto*, No. 1:11-cv-00613, ECF 21 (W.D.N.Y. Mar. 14, 2014). The question, then, must be whether the *Hayes*

---

[12] See *Holloway*, 960 F.3d at 845, 847–51 *aff'g Holloway*, 386 F. Supp. 3d at 890 (amended complaint filed in 2018) (prior cases unsealed in 2007). See also *Maur*, 981 F.3d at 526 (noting that the public disclosure bar applied in *Holloway* because the relator's "allegations were substantially the same as those made in three qui tam actions from a decade earlier.") (cleaned up).

[13] "The cases are *Litwin v. HCR ManorCare, Inc.*, 2:07CV681 (D.S.C.) (Doc. 82-6); *Olson v. HCR ManorCare, Inc.*, 2:07CV680 (D.S.C.) (Doc. 82-7); and *Williams v. HCR ManorCare, Inc.*, 2:07CV682 (D.S.C.) (Doc. 82-8)." *Holloway*, 386 F. Supp. 3d at 893 n.5.

and *Takemoto* relators are considered "agent[s]" of the Government. § 3730(e)(4)(A)(i).

"District courts are split as to whether a qui tam relator is the government's agent where the government opts out of the case." *Holloway*, 386 F. Supp. 3d at 894. "A majority of courts" have found that "a relator acts as the government's agent despite its declination to intervene because it is the real party in interest and the relator is the assignee of the Government's damages claim." *Id.* at 894–95 (internal quotation marks and quotation omitted) (collecting cases). And despite declining to intervene, the Government still retains "a fair amount of control over qui tam litigation." *Id.* (italics and internal quotation marks omitted) (quotation omitted). For instance, "the Government still receives copies of all pleadings and deposition transcripts," it "can move to stay discovery if it interferes with an ongoing criminal or civil investigation," it "has the right to approve or reject a stipulated dismissal," and it "may even intervene at a later date upon a showing of good cause and subsequently dismiss a case over the relators' objections." *United States ex rel. Gilbert v. Va. Coll., LLC*, 305 F. Supp. 3d 1315, 1324 (N.D. Ala. 2018); *cf. Holloway*, 386 F. Supp. 3d at 895 ("To conclude otherwise would render the phrase 'or its agent' in § 3730(e)(4)(A)(i) meaningless. . . . [T]he statute deems a case public if *either* the government or its agent is a party. Who, if not the private relator, is the government's agent?") (emphasis in original).

The Court agrees with "[a] majority of courts" that relators in a qui tam case are considered "agent[s]" under § 3730(e)(4)(A)(i) when the Government declines to

intervene. *Holloway*, 386 F. Supp. 3d at 894–95 (collecting cases). Such cases are accordingly "public" under the statute.

Last, the 2017 news article that the Court has judicially noticed, ECF 78-10, is also "public" under § 3730(e)(4)(A)(iii). The article was publicly disclosed "in the news media," *Rahimi* 3 F.4th at 823 (cleaned up), and as detailed, the information was readily available to the public in 2017.

C.   *Second Prong*

The Court must next weigh "whether the allegations in the complaint are 'substantially the same' as those contained in the public disclosures." *Maur*, 981 F.3d at 522 (quoting *Holloway*, 960 F.3d at 849). Merely "add[ing] some new details to describe essentially the same scheme by the same corporate actor" is not enough to survive the public disclosure bar. *Holloway*, 960 F.3d at 851; *see also Rahimi*, 3 F.4th at 826.

Reading the *Hayes* and *Takemoto* complaints together, the allegations are "substantially the same as those contained in the" presently filed complaint. *Maur*, 981 F.3d at 522 (internal quotation marks and quotation omitted). The Relators claimed that six allegations detailed in their amended complaint were not publicly disclosed. Four of the allegations related only to the insurer Defendants:

- Willful failure to correct inaccurate reporting even after specific notice from Relators; . . .
- Willful failure to report and reimburse for specific exemplars; . . .
- Failure to report, or report properly, in tens of thousands of instances; . . .
- Critical information intentionally avoided: Defendants created and maintained a system that they know is inadequate because they intentionally do not ask beneficiaries for . . . sources of health

22

> insurance coverage, Social Security numbers, Medicare Health Insurance Claim Numbers, or Member Beneficiary Identifiers.

ECF 86, PgID 2072–73 (emphases, internal parentheticals, and internal citations all omitted). But *Hayes* and *Takemoto* show that the Relators' claims against the insurer Defendants have already been alleged.[14]

The Relators first alleged that Defendants "fail[ed] to report[] and correct misreporting" even after they were "notified of their failure to satisfy Section 111's reporting requirements." ECF 41, PgID 1018–19. The allegation is nearly identical to the following *Takemoto* claim:

> Defendants were aware of their obligations to make such payments, both due to the well-established nature of the [Medicare Secondary Payer] statute and because Dr. Takemoto repeatedly contacted Defendants and provided them with a detailed explanation of their rights and liabilities under the [Medicare Secondary Payer] statute.
>
> Despite such knowledge, Defendant[s] elected to continue to avoid their repayment obligations to the Government and inadequately provide for future medical expenses in settlements.

ECF 78-28, PgID 1426. *Takemoto* therefore disclosed the exact theory of fraud that the Relators' first allegation details. The relators in both *Takemoto* and the present case alleged that they specifically notified the primary plans of their failures, and despite the notice, the primary plans carried on in their allegedly fraudulent schemes. *Compare id.*, *with* ECF 41, PgID 1018–19, *and* ECF 86, PgID 2072.

---

[14] The conspiracy allegations involve Defendant ISO. ECF 86, PgID 2072–73. Accordingly, the Court's public disclosure analysis here does not consider the conspiracy allegations; the Court will resolve the conspiracy claim in a separate order. *See* ECF 41, PgID 1075–77 (claim two).

It is hard to imagine facts that more closely align with the Relators' first allegation than what *Takemoto* detailed. The Relators claimed that no public source previously "identified any instance where Defendants ignored actual notice of underreporting and of reimbursement failures and refused to rectify them." ECF 86, PgID 2073. But the *Takemoto* relator alleged that he met with Allstate and other insurer companies to advise them of their Section 111 reporting requirements. ECF 78-28, PgID 1423. Despite the notice, "none of the defendants [took] meaningful steps . . . to remedy their noncompliance with their [Medicare Secondary Payer] obligations." *Id*. Thus, the insurers were given "specific notice from [the relator]" in *Takemoto*, and yet "willfully failed to correct inaccurate reporting." ECF 86, PgID 2072 (cleaned up); *see* ECF 78-28, PgID 1423, 1432–34 (allegations against Allstate). The public disclosure bar thus applies.

Second, the Relators appeared to argue that the public disclosure bar cannot apply to their claims because they presented three "specific exemplars." ECF 86, PgID 2073 (emphasis omitted), 2080–84. But the argument is foreclosed by the Sixth Circuit's rule "that a relator's claims cannot survive the public disclosure bar because his allegations added some new details to describe essentially the same scheme by the same corporate actor as the publicly disclosed fraud." *Rahimi*, 3 F.4th at 826 (cleaned up). In other words, the exemplars barely elaborated on the schemes disclosed in *Hayes* and *Takemoto*, and so their corresponding allegations do not clear the public disclosure hurdle.

Relator Angelo's exemplar, ECF 41, PgID 1069–71, falls short because it detailed how the Government would cover payment of controlled substances for Medicare or Medicaid beneficiaries even though a primary plan "was obligated to provide primary payment for those controlled substances." *Id.* at 1070. In turn, the primary plans could fraudulently avoid their legal obligations to pay for "beneficiaries' accident-related medical expenses." *Id.* In short, the exemplar reiterated how "Defendants are routinely failing to repay Medicare conditional payments that they are statutorily required to repay." ECF 78-28, PgID 1424 (*Takemoto* amended complaint).

Relator MSP WB's exemplar fares the same. ECF 41, PgID 1089–90. There, Relator MSP WB detailed the medical payment history of "K.S." *Id.* The exemplar explained that "Allstate is the primary payer responsible for payment and/or reimbursement of K.S.'s accident-related medical expenses," *id.* at 1089, but "Allstate failed to reimburse [the Medicare Advantage Organization]'s conditional payments," *id.* at 1090. Allstate failed to pay, the exemplar claimed, even though "Allstate reported to ISO information regarding K.S.'s accident and admitted its primary payer status." *Id.* Put another way, the insurer Defendants "knowingly avoided and concealed their statutory obligations under the Medicare Secondary Payer Act . . . to fully reimburse [a Medicare Advantage Organization] for the payments that the [] program had already made for the[] beneficiar[y's] health care." ECF 78-29, PgID 1487 (*Hayes* amended complaint). Thus, Defendants failed to "repay [Medicare] for

past conditional payments and protect Medicare's interests for the costs of future care." ECF 78-28, PgID 1424 (*Takemoto* amended complaint).

E.A.'s exemplar is no better. ECF 41, PgID 1071–72. E.A. was injured in a car accident and incurred more than forty accident-related medical expenses. *Id.* at 1071. But "Allstate Insurance Group never reported E.A.'s identity and claims . . . as required by Section 111 and failed to make primary payments relating to E.A.'s accident-related care." *Id.* Thus, "Medicare paid for prescription medication that Allstate Insurance Group was obligated to pay." *Id.* at 1072. *Takemoto* likewise alleged that "Allstate did not have a history of [Medicare Secondary Payer] compliance," "did not express any desire to actively pursue [Medicare Secondary Payer] compliance," and "knowingly concealed and knowingly and improperly avoided their obligation to pay or transmit money or property to the Government, in the form of their conditional payment repayment obligations under the Medicare Secondary Payer rules." ECF 78-28, PgID 1433–34.

Consider too that *Hayes* alleged primary payers had "knowingly avoided and concealed their statutory obligations under the Medicare Secondary Payer Act . . . to fully reimburse Medicare for the payments that the Medicare program had already made for these beneficiaries[] for health care." ECF 72-29, PgID 1487; *see also id.* at 1494 ("Defendant [Allstate Corporation] nevertheless failed to notify, obtain a conditional demand[, and] reimburse Medicare for its expenditures."). Simply put, the Relators' exemplars describe "the same scheme" (fraudulent failure to report and reimburse) by "the same corporate actor" (Allstate and similar insurance companies)

26

as the publicly disclosed fraud. *Rahimi*, 3 F.4th at 826 (cleaned up). Thus, the public disclosure doctrine bars the "willful failure to report and reimburse" allegation. ECF 86, PgID 2073 (emphasis omitted).

Third, the Relators inaccurately contended that there had been no prior disclosure of the broad statement that primary payers "fail[ed] to report, or report properly, in tens of thousands of instances." ECF 86, PgID 2073 (emphasis omitted). The *Takemoto* relator alleged that "[d]efendants either deliberately refuse[d] to learn whether a claimant was a Medicare beneficiary . . . and thus avoid[ed] reimbursing the Government for its conditional payments or outright refuse[d] such repayment despite knowing that it is owed." ECF 78-28, PgID 1408. As a result, the Relators' claims that "[Defendants] fail[ed] to provide government payers with notice of their primary payer obligations" and that Defendants were "certain of their obligation to make payment, but they den[ied] all liability regarding the services," ECF 41, PgID 1021, share similarities with the *Takemoto* claims that are "impossible to ignore," *Rahimi*, 3 F.4th at 824. Both complaints alleged that: (1) primary payers failed to report or provide notice to the Government under Section 111, *see* ECF 41, PgID 1021, 1043; ECF 78-28, PgID 1408, 1421–24; and (2) primary payers refused to reimburse the Government by falsely denying repayment obligations, *see* ECF 41, PgID 1021, 1072; ECF 78-28, PgID 1408, 1422, 1424.

Contrary to the Relators' arguments, it is irrelevant that "Relator MSP's independent data analysis of its non-public proprietary claims data" revealed the

27

alleged reporting failure. ECF 86, PgID 2073. After all, the *Takemoto* complaint already revealed substantially similar reporting failure claims.

Moreover, a 2017 news article about *Hayes* detailed the widespread "[f]ailure to report" allegation. *Id.* at 2073 (emphasis omitted); ECF 78-10, PgID 1334 (news article). The article first explained that the *Hayes* complaint "accused more than 60 companies"—including Allstate—"of engaging in a nationwide scheme to withhold payments to which Medicare was entitled under the Medicare Secondary Payer Act, in violation of the FCA." ECF 78-10, PgID 1334. Although the lawsuit was ultimately dismissed, the article detailed that the *Hayes* defendants requested that the case be "considered barred under the FCA's first-to-file bar, as another similar lawsuit had been filed before [that] one." *Id.* The 2017 article publicly reported on lawsuits raising FCA claims brought against private insurers and the specific allegations of Medicare Secondary Payer Act fraud raised in the suits. *Id.* Aside from *Takemoto*, the 2017 article detailed the existence of lawsuits raising the same fraud allegations as those lodged here. The Relators' failure-to-report claims therefore "describe essentially the same scheme" as *Takemoto* and in the news media. *Holloway*, 960 F.3d at 851. Those allegations are barred.

The fourth allegation is substantially the same as a *Takemoto* allegation. *See* ECF 41, PgID 1061; ECF 86, PgID 2073. The Relators alleged that Defendants "systematic[ally] fail[ed] to completely or accurately satisfy Section 111's reporting requirements." ECF 41, PgID 1018. And the failure was due to the "systems [Defendants] have in place" that "cannot completely and accurately satisfy their

reporting requirements." *Id.* at 1019. Yet "[d]espite knowledge of said reporting failures, the Primary Plans have done nothing to change their conduct," and in turn Defendants "under report and under reimburse the Government Healthcare Programs." *Id.* at 1020.

In the same way, the *Takemoto* defendants allegedly "deliberately refuse[d] to learn whether a claimant was a Medicare beneficiary (or otherwise determine whether any payment to Medicare is owed) and thus avoid[ed] reimbursing the Government for its conditional payments." ECF 78-28, PgID 1408. And those defendants "either had no [Medicare Secondary Payer] process whatsoever for liability and no-fault cases, or in the event that a process existed, it was randomly followed[] and did not lead to full compliance with the statutory requirements." *Id.* at 1422. The *Takemoto* relators explained that compliance procedures could be "as simple as asking the claimant or demanding copies of all paid claims for medical services," or else "contacting . . . either the Social Security Administration or [the Centers for Medicare and Medicaid Services]." *Id.* at 1418.

But even after the *Takemoto* defendants were advised about the "structure of the [Medicare Secondary Payer] program, the potential impact of . . . Section 111 reporting requirements, and the potential liability each insurer faced under the [FCA]," none took "meaningful steps . . . to remedy their noncompliance with their [Medicare Secondary Payer] obligations." *Id.* at 1423. All told, the *Takemoto* relator alleged that "[d]efendants routinely lacked procedures . . . that would allow them— other than sporadically and incidentally—to [] identify Medicare beneficiary status

of claimants[,] . . . report liability and no-fault settlements . . . involving Medicare beneficiaries[,] . . . determine the amount of conditional payments owed[,] . . . or [] repay [the Centers for Medicare and Medicaid Services] for past conditional payments." *Id.* at 1424.

Put simply, the fourth allegation here repeats the same story: primary payers failed to create and enforce a system identifying when their insureds were covered by Medicare or Medicaid, which led to them underreporting claims to the Government, despite the primary payers knowing that their compliance procedures failed to fulfill their Section 111 obligations. The allegation was already detailed in *Takemoto* and is barred by the public disclosure doctrine.

### D. *Third Prong*

Last, a relator may still pursue a claim if he or she is the original source of it. *Rahimi*, 3 F.4th at 828 (citing 31 U.S.C. § 3730(e)(4)(A)–(B)). A relator may claim that he is an original source when he "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and [he] has voluntarily provided the information to the Government before filing an action under this section." ECF 86, PgID 2080 (quoting § 3730(e)(4)(B)).[15]

Materiality under § 3730(e)(4)(B) requires the relator "to bring something to the table that would add value for the government." *Maur*, 981 F.3d at 527 (citations omitted). But merely bringing more examples of the publicly disclosed fraud is not

---

[15] The Sixth Circuit has read this provision of § 3730(e)(4)(B) as "a safety valve." *Rahimi*, 3 F.4th at 831.

enough "to change the government's thinking or decision-making with respect to the alleged fraud." *Rahimi*, 3 F.4th at 831–32 (collecting cases).

Defendants argued that the Relators are not original sources for two reasons. First, the Relators "alleged [no] facts demonstrating they provided information to the [G]overnment prior to a public disclosure and before filing this action." ECF 77, PgID 1230 (footnote omitted). Second, the Relators did not provide "any additional material information to the Government." *Id.* at 1232 (cleaned up). The Court will address both arguments in turn.

The Relators did not "voluntarily disclose to the Government the information on which allegations . . . in a claim are based," § 3730(e)(4)(B), before the sources identified in the first prong analysis, above, were disclosed. *Takemoto* and *Hayes* were both unsealed in 2014 and the amended complaints were also filed in 2014. *Takemoto*, No. 1:11-cv-00613, ECF 22 (W.D.N.Y. Apr. 3, 2014)) (order unsealing case); *Hayes*, No. 1:12-cv-01015, ECF 16 (W.D.N.Y. Mar. 20, 2014) (order unsealing case); ECF 78-28, PgID 1479 (*Takemoto* amended complaint); ECF 78-29, PgID 1608 (*Hayes* amended complaint). Relator Angelo's disclosure statement to the Government is dated May 2019, ECF 1-1, PgID 75, and the Relators sent their subsequent disclosure statement to the Government in November 2021, ECF 41, PgID 1025. No evidence shows that the Relators disclosed any information to the Government before 2014, when *Takemoto* and *Hayes* were unsealed, and the Relators did not argue that they disclosed any other allegations to the Government before the 2019 and 2021 disclosures. *See* ECF 86, PgID 2080–81. "Because the Relators did not communicate

anything to the Government prior to those public disclosures, they do not fit within the first definition of an original source." *Maur*, 981 F.3d at 527 (cleaned up).

Still, the Relators could qualify as original sources if they "ha[ve] knowledge that is *independent* of and *materially* adds to the publicly disclosed allegations." § 3730(e)(4)(B) (emphases added). But the information presented in the present complaint does not materially add to the public disclosures for two reasons.

First, the Relators included three exemplars in their complaint, but "there is nothing significant or new about them." *Maur*, 981 F.3d at 527 (internal quotation marks and quotation omitted). As discussed in prong two, the similarities between the present case and *Takemoto* and *Hayes* are impossible to ignore, and nothing in the present complaint would "offer information of such a nature that knowledge of it would affect the Government's decision-making." *Id.* at 528 (cleaned up). The Relators' cursory argument that their allegations are "based on information uniquely available to [them]," ECF 86, PgID 2081, is unpersuasive given that the relators in *Takemoto* and *Hayes* identified a substantially similar fraudulent scheme as the one alleged here.

Second, the Relators countered that they supplied "previously unknown violations through their own business experiences, self-funded litigation, and analysis of their own proprietary non-public data." ECF 86, PgID 2083. But the information derived from Relator MSP WB's "own proprietary non-public data," *id.*, is information apparently belonging to MSP Recovery, LLC—a different entity than

32

Relator MSP WB.[16] Any information from MSP Recovery, then, is attributed to MSP Recovery—not MSP WB. The Relators offered no supporting authority to show that affiliated entities can share institutional knowledge derived from one entity's proprietary system for the purpose of the public disclosure bar's original source safety valve. *See id.* at 2083–84. And the Relators did not suggest that MSP WB and MSP Recovery should be considered the same entity. *See id.*

With no authority or facts showing that the Court should ascribe knowledge possessed by MSP Recovery to Relator MSP WB, the latter cannot claim to be the original source of information collected by a different corporate entity. *See United States ex rel. Fine v. Advanced Scis., Inc.*, 99 F.3d 1000, 1007 (10th Cir. 1996) ("[T]o be independent, the relator's knowledge must not be derivative of the information of others, even if those others may qualify as original sources.") (citation omitted); *cf. United States ex rel. Precision Co. v. Koch Indus., Inc.* (*Precision I*), 971 F.2d 548, 554 (10th Cir. 1992) (holding that a company cannot be an original source of information discovered by its president's and majority shareholder's "individual investigations" before the company was formed).

The Relators do not qualify as original sources under the FCA. The public disclosure bar therefore applies and forecloses the reverse FCA violations claim against the insurer Defendants.

---

[16] The Relators did not dispute Defendants' assertion that the information comes from an affiliate company, MSP Recovery, LLC. *Id. Compare MSPA Claims I, LLC v. Infinity Prop. & Cas. Grp.*, 374 F. Supp. 3d 1154, 1161 (N.D. Ala. 2019) (employees describing "MSP Recovery's system") *with* ECF 41, PgID 1020 (description of the MSP System).

## CONCLUSION

The Court will dismiss the reverse FCA violations claim against all insurer Defendants. *See* ECF 41, PgID 1073–75 (claim one). The Court will resolve the remaining claims in a separate order. The Court will therefore grant the motions to dismiss, ECF 77, and for judicial notice, ECF 78, in part.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion to dismiss [77] is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that the motion for judicial notice [78] is **GRANTED IN PART**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 9, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 9, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager