UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA
and STATE OF MICHIGAN,

        Plaintiffs,

ex rel. MICHAEL ANGELO and
MSP WB, LLC,

        Plaintiffs/Relators,

v.

ALLSTATE INSURANCE CO.,
et al.,

        Defendants.
_____/

Case No. 2:19-cv-11615

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING
DEFENDANT INSURANCE SERVICES OFFICE,
INC.'S MOTION TO DISMISS [89] AND DISMISSING CASE**

Relator Michael Angelo brought the present False Claims Act (FCA) action against three insurance companies on behalf of the United States and Michigan. ECF 1. After the Government declined to intervene, ECF 12 (under seal), Relator Angelo moved for leave to file a second amended complaint, ECF 32. The Court granted the motion. ECF 35. The second amended complaint added new parties, including: thirty-two insurance entities (insurer Defendants); an insurance service provider, Insurance Services Office (ISO); and a co-Relator, MSP WB. ECF 38 (under seal). The Relators sued on behalf of the federal Government, ten States, and Puerto Rico. *Id.* (under

1

seal). The federal, State, and Puerto Rico Governments jointly declined to intervene in the case. ECF 39 (under seal).

The Relators then filed the unsealed second amended complaint. ECF 41. The second amended complaint included three claims: (1) reverse FCA violations, *id.* at 1073–75; (2) conspiracy to violate the FCA, *id.* at 1075–77; and (3) violations of State false claims laws, *id.* at 1077–86. The insurer Defendants jointly moved to dismiss the case. ECF 77. After a motion hearing, the Court granted the motion in part and dismissed claim one against the insurer Defendants. ECF 102, PgID 2980. Defendant ISO also moved to dismiss the second amended complaint. ECF 89. For the reasons below, the Court will grant the motion to dismiss, dismiss the conspiracy claim against the insurer Defendants, and decline to exercise supplemental jurisdiction over the remaining State claims.[1]

## BACKGROUND[2]

In the interest of judicial economy, the Court will adopt the background section from its previous opinion and order, ECF 102, PgID 2948–51. The Court will add the following facts.

Defendant ISO is a corporation that "provide[s] fraud prevention and data management, compliance, and reporting services to Primary Plans."[3] ECF 41, PgID

---

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs and without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

[2] Because the Court must view all facts in the light most favorable to the nonmoving party, *see Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008), the Court's recitation does not constitute a finding or proof of any fact.

[3] As explained in the background section of the Court's previous opinion and order, the insurer Defendants are "Primary Plans." ECF 102, PgID 2948.

1032–33. It manages more than one billion industry-wide insurance claims and "provide[s] Section 111 reporting services" to Primary Payers. *Id.* The insurer Defendants contracted "with ISO to satisfy their mandatory reporting responsibilities." *Id.* at 1046. MSP[4] also contracted "with ISO and subscribed to ISO ClaimSearch services to ascertain the status of primary payers' reporting obligations." *Id.* at 1064; *see* ECF 89-1 (ISO ClaimSearch contract).

Before the Relators filed the present lawsuit, Defendant ISO cancelled the contract with MSP after MSP breached a term of agreement. *See* ECF 89, PgID 2684–85 ("ISO's contract with Relator MSP's affiliate explicitly permitted ISO to cancel it upon a breach of the contract (which, based on Relators' allegations, occurred here)."); ECF 94, PgID 2749 ("Relators contest neither the contract's terms nor its breach."); *see also* ECF 89, PgID 2697 ("MSP still had access to ISO ClaimSearch in 2017."). Defendant ISO also revised its terms of agreement to exclude as eligible users "attorneys or firms that practice in debt collection or initiate or participate in class action lawsuits." ECF 41, PgID 1064–65 (alterations omitted). And Defendant ISO required authorized users to obtain "prior express written consent of ISO" before they could "use, share[,] or disclose ClaimSearch information . . . to any third party." ECF 41, PgID 1065.

---

[4] Relator MSP WB LLC is an affiliate of MSP, which contracted with Defendant ISO. Thus, Relator MSP did not itself contract with Defendant ISO. ECF 89, PgID 2684 n.1.

## LEGAL STANDARD

The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett*, 528 F.3d at 430.

But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009)

## DISCUSSION

The Court will first resolve the reverse FCA violations claim (claim one) against Defendant ISO. After, the Court will resolve the conspiracy claim (claim two) as to Defendant ISO. The Court will then dismiss the conspiracy claims (claim two) as to the insurer Defendants. Last, the Court will decline to exercise supplemental jurisdiction over the State-law claims (claim three).

I. Reverse FCA Violations Claim Against ISO

In claim one, the Relators alleged that "Defendants' intentional noncompliance with federal reporting laws and secondary payer laws" violated the Reverse False Claims Act, 31 U.S.C. § 3729(a)(1)(G). ECF 41, PgID 1073. The Relators alleged in all

4

but one paragraph that "Defendants" violated the FCA. *Id.* at 1073–75 (naming "Defendants" nineteen times). In the one paragraph that does not mention "Defendants," the Relators stated that "[t]he Primary Plans' Section 111 report failures are material to the Government Healthcare Programs' decisions to pay for accident-related medical expenses . . . ." *Id.* at 1075. ISO is not specifically mentioned in claim one. *See id.* at 1073–75.

Yet in the second amended complaint, the Relators defined "Defendants" as "the Primary Plan defendants . . . and Insurance Services Offices, Inc." *Id.* at 1015. "Defendants," as named in claim one, should then presumably include ISO. Indeed, the Relators argued as much. ECF 93, PgID 2726 (citing ECF 41, PgID 1015). But the Sixth Circuit has made clear that "a complaint may not rely upon blanket references to acts or omissions by all of the defendants," because "each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (cleaned up). Put simply, the Relators were required to allege some non-conclusory conduct by Defendant ISO that would give rise to liability under claim one. But they failed to do so. Two grounds undergird that finding; the Court will address each in turn.

    A.    *Insufficient Facts*

First, the facts alleged about the conduct attributed to Defendant ISO are conclusory and insufficient to raise a right to relief above the speculative level. From the beginning of the second amended complaint through claim one, Defendant ISO is

5

mentioned thirty-four times. ECF 41, PgID 1017–75. The allegations about Defendant ISO can be organized into three groups: background facts, conclusory facts about civil conspiracy, and facts that fail to show an FCA violation.

In the first grouping, the allegations about Defendant ISO are innocuous background facts. The Relators described Defendant ISO's corporate organization, its corporate purpose, and that it "advertises its massive database of insurance claims, yet it restricts its access to Primary Plans and their third-party administrators." *Id.* at 1032–33. Defendant ISO also allegedly "provides reporting for a majority of the insurance industry, meaning their database is essentially a private industry MMSEA Section 111 clearinghouse." *Id.* at 1064. The Relators added that the insurer Defendants "contract with ISO to satisfy their mandatory reporting responsibilities. Hence, Primary Plans delegated their reporting responsibilities to ISO and relied exclusively on ISO to comply with their Section 111 obligations." *Id.* at 1046; *see id.* at 1019, 1063 (same). And the Relators also claimed that "MSP had a contract with ISO and subscribed to ISO ClaimSearch services to ascertain the status of primary payors' reporting obligations." *Id.* at 1064. In sum, even when presumed true and viewed in the light most favorable to the Relators, the background facts fail to ascribe any wrongdoing to ISO. *Bassett*, 528 F.3d at 430. They merely explain the general corporate dealings of Defendant ISO.

In the second grouping, the Relators' allegations are conclusory as to the issue of civil conspiracy. The Relators asserted that Defendant ISO facilitates the insurer Defendants' "ability to operate in the shadows." ECF 41, PgID 1018. They also

claimed that Defendant ISO allegedly collaborated with the insurer Defendants to "actively conceal[] the [insurer Defendants'] obligation to pay or reimburse billions of dollars to Government Healthcare Programs." *Id.* (footnote omitted). Defendant ISO has also allegedly "done nothing to improve the reporting failures at issue," and instead, "conspires with the Primary Plans by thwarting any investigation into deficient reporting practices." *Id.* at 1019. What is more, the Relators claimed that third parties directed "co-conspirators, including ISO, to withhold data from the governmental agencies and [the Relators] in an effort to obstruct justice." *Id.* at 1066. Each alleged fact amounts to nothing more than a legal conclusion: that Defendant ISO "facilitated," "collaborat[ed]," or "conspire[d] with" the insurer Defendants to "withhold data from governmental agencies." *Id.* at 1018–19, 1066. But the Court will not presume the truth of legal conclusions in the complaint, *Iqbal*, 556 U.S. at 678, so the conclusory allegations here are insufficient to raise a right to relief above the speculative level.

In the third grouping, the Relators alleged facts that are unmoored from the FCA statute or that otherwise fail to show that Defendant ISO plausibly violated the Act. The Relators first claimed that they "are in possession of a substantial number of records demonstrating the *Primary Plans'* liability regarding these reverse false claims," a fact that "[t]he Primary Plans and ISO cannot dispute." *Id.* at 1023 (emphasis added). The allegation suggests no more than that insurer Defendants, not Defendant ISO, could be liable for reverse false claims.

7

The Relators also tried to tie facts from a separate lawsuit involving different insurers to the present case. *See id.* at 1059–60. In that lawsuit, ISO was allegedly "unable to report to CMS that a claimant is a Medicare beneficiary." *Id.* The Relator's factual bootstrapping is unavailing, however, because the assertion fails to explain how Defendant ISO's alleged conduct involving a different matter and different insurers is connected to the conduct alleged here.

Finally, the Relators recounted the contractual relationship between Defendant ISO and the affiliate of Relator MSP WB (also called "MSP"). The Relators explained that MSP used ISO's database and "identified rampant *fraud employed by the Primary Plans* by identifying countless instances where the Primary Plans reported a claim to ISO but failed to report the claim to CMS." *Id.* at 1064 (emphasis added). After MSP discovered the alleged fraud "employed by the Primary Plans," *id.*, Defendant ISO allegedly "terminated its relationship with MSP and required that any future user of its service disclaim use of the data to enforce the MSP Laws," *id.* at 1019. Defendant ISO also "changed the terms of its subscription contracts to specifically preclude parties such as MSP . . . from using its data to pursue recovery or subrogation services," and precluded users from sharing the ClaimSearch data with third parties "without the prior express written consent of ISO." *Id.* at 1064–65. Last, the Relators claimed that Defendant ISO's "data is pivotal in proving that the Defendants, collectively, fail[ed] to accurately report or report at all under Section 111[,] which has proven a lucrative practice for them all." *Id.* at 1065 (footnote omitted).

8

Taken together, the facts alleged about Defendant ISO's contractual relationship with MSP fail to state a plausible FCA violation claim. The alleged facts show only that Relator MSP allegedly discovered a fraud "employed by the Primary Plans," not Defendant ISO, and that Defendant ISO narrowed its authorized users by excluding attorneys or firms that seek to initiate class action lawsuits. *See id.* at 1064–65. The Relators argued that the Court must take as true that "ISO cancelled MSP's subscription and changed the terms of its subscription contracts to specifically preclude parties such as MSP . . . from using its data to pursue recovery or subrogation services" and "[t]o protect its status as an industry leader in the interests of its clients." ECF 93, PgID 2729 n.9 (emphases omitted). But even taking those conclusory allegations as true, the other facts, as pleaded, fail to show how Defendant ISO "knowingly . . . cause[d] to be made or used[] a false record or statement material to an obligation to pay or transit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Indeed, the Court must take several inferential leaps to reach such a conclusion based on Defendant ISO's decision to cease its contractual relationship with MSP. But the Court is only required to draw "reasonable inference[s]" in favor of the Relators. *Bassett,* 528 F.3d at 430. The contractual allegations thus fail to support claim one.

In sum, no facts specific to Defendant ISO support the allegations against it in claim one. *See id.* at 1073–75; 31 U.S.C. § 3729(a)(1)(G). And the Relators' "blanket references to acts or omissions by all of the '[D]efendants,'" do not save the claim.

9

*Bledsoe*, 342 F.3d at 643. Claim one thus fails to "raise a right to relief above the speculative level," as to Defendant ISO. *ProPride, Inc.*, 579 F.3d at 609.

  B.  *Conflicting Claims*

  The second amended complaint and the Relators' response brief lodged conflicting assertions about whether Defendant ISO is responsible for alleged reporting failures by the insurer Defendants. In the second amended complaint, the Relators claimed that although the insurer Defendants, who are Responsible Reporting Entities, may "delegate reporting responsibility to another entity, such as a data reporting agent (e.g., ISO)," the insurer Defendants "remain ultimately responsible for the reporting, the content of the data, and its validity." ECF 41, PgID 1063 (internal quotation marks omitted); *see id.* at 1047 ("While the Primary Plans may delegate their reporting responsibilities, they maintain responsibility for their submissions."); *see also id.* at 1044 (defining Primary Plans as "Responsible Reporting Entities."). And the insurer Defendants allegedly "delegated their reporting responsibilities to ISO and relied exclusively on ISO to comply with their Section 111 obligations." *Id.* at 1046.

  Yet in the Relators' response brief, they contended that "ISO's assistance in and facilitation of the [insurer Defendants'] false reports makes ISO directly liable under the FCA." ECF 93, PgID 2727. Clearly, the two assertions conflict. The Relators may not on the one hand specifically allege that ISO *is not* ultimately responsible for the validity of its reporting and data, and on the other hand contend in its briefing that ISO *is* directly liable for any reporting failure. At any rate, the text of the

10

complaint controls, and the Relators alleged in the complaint that the insurer Defendants, not ISO, are "ultimately responsible for the reporting, the content of the data, and its validity." *Id.* at 1063; *cf. Jocham v. Tuscola Cnty.*, 239 F. Supp. 714, 732 (E.D. Mich. 2003) ("The pleading contains no such allegation, and the plaintiffs may not amend their complaint through a response brief.") (citation omitted).

To be sure, under 31 U.S.C. § 3729(a)(1)(G), "any person who . . . knowingly . . . causes to be made . . . a false record or statement material to an obligation to pay . . . the Government . . . is liable to the United States Government for a civil penalty." Thus, even if Defendant ISO is not ultimately responsible for reporting under the FCA statute, it could still be liable for *causing* false records to be reported to the government. Yet, as detailed above, Relators alleged no non-conclusory facts showing that Defendant ISO "knowingly" caused the insurer Defendants to submit false insurance reports. *Id.* Thus, the Relators' second amended complaint "fail[s] to state FCA violations with sufficient particularity" as to Defendant ISO. *See Bledsoe* 342 F.3d at 643. Accordingly, the Court will dismiss claim one as to Defendant ISO.

II. <u>Conspiracy Claim Against ISO</u>

In claim two, the Relators alleged that "Defendants violated the FCA by conspiring to submit inaccurate or incomplete Section 111 reporting" under 31 U.S.C. § 3729(a)(1)(C). ECF 41, PgID 1076. To support the allegation, the Relators explained that "[Defendant] ISO, as a data repository, canceled MSP's contract to access its data and implemented user policies to protect the data from being used to enforce, among

11

other things, the MSP Law against the Primary Plans." *Id.* at 1076. For two reasons, the Court finds that the complaint fails to state a valid conspiracy claim against Defendant ISO.

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). "Each conspirator need not have known all of the details of the illegal plan or all of the participants involved," nor is "[e]xpress agreement among all the conspirators" required. *Id.* at 944. Rather, "[a]ll that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id.*

To start, the allegations in the second amended complaint fail to meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b). In the FCA context, the heightened pleading standard may be relaxed "when a relator alleges specific personal knowledge that relates directly to billing practices." *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 838 F.3d 750, 769 (6th Cir. 2016) (citation omitted). But Defendant ISO's billing practices are not at issue; the insurer Defendants' billing practices are. Thus, the heightened pleading standard applies here.

And the second amended complaint provides only skeletal allegations of fraud by Defendant ISO. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." The Relators argued that because

12

(i) Defendant ISO is "an expert in the [Section 111 reporting] industry," (ii) the insurer Defendants contracted with Defendant ISO to fulfill its reporting obligations, and (iii) the insurer Defendants allegedly failed to fulfill their reporting obligation, the conclusion that Defendant ISO conspired with the insurer Defendants to defraud the government must follow. ECF 93, PgID 2734. The Court disagrees.

To state a violation of the FCA, the Relators needed to show that Defendant ISO shared "a single plan" and a "general conspiratorial objective" with the insurer Defendants. *Hooks*, 771 F.2d at 944. Yet the complaint lacks any facts—even circumstantial facts—that show a plan or agreement to conspire against the government. *See* ECF 41, PgID 1057–73. Indeed, the only connection between Defendant ISO and the insurer Defendants is a contractual one. *See id.* at 1046 ("The Primary Plans contract with ISO to satisfy their mandatory reporting responsibilities. Hence, Primary Plans delegated their reporting responsibilities to ISO and relied exclusively on ISO to comply with their Section 111 obligations."). A mere contractual relationship that centers on Section 111 reporting does not lead to the conclusion that Defendant ISO took part in "a single plan" or tried to achieve a "general conspiratorial objective" with the insurer Defendants. *Hooks*, 771 F.2d at 944. In short, the Relators relied on conclusory allegations rather than particularized facts to show that Defendant ISO should be liable for fraud. The second amended complaint therefore fails to meet the Rule 9(b) heightened pleading standard.

And even under a more relaxed pleading standard, the Relators' allegations specific to Defendant ISO are conclusory as to the issue of civil conspiracy. The analysis detailed in relation to the civil conspiracy allegations in claim one applies equally to claim two. Thus, even at a lesser pleading standard, the conclusory factual allegations fail to state a claim.

Last, the claim two allegations about the contract between Defendant ISO and MSP, though particularized, do not compel the inference that Defendant ISO conspired to commit fraud on the government. As detailed in the claim one discussion above, the Court must take several inferential leaps to conclude that the Relators sufficiently pleaded a conspiracy based on Defendant ISO's decision to cease its contractual relationship with MSP. *See Bassett,* 528 F.3d at 430. Besides, the Relators never contended that the contract was terminated unlawfully. Thus, if MSP breached the contract, Defendant ISO was free to cancel it at any time. *See* ECF 89-1, PgID 2704; ECF 94, PgID 2749 ("Relators contest neither the contract's terms nor its breach."). The facts show only that Defendant ISO exercised its lawful right to cancel the contract. The contractual allegations thus fail to support a claim of conspiracy.

III.  Conspiracy Claim Against Insurer Defendants

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks*, 771 F.2d at 943–44. The Relators alleged that Defendant ISO is the only party with whom the insurer Defendants conspired to violate the FCA. ECF 41, PgID 1075. Because the Court has dismissed the conspiracy

14

claim against Defendant ISO, the Court must in turn dismiss the conspiracy claim against the insurer Defendants.

IV. <u>State-Law Claims</u>

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The Court has original jurisdiction over claims one and two because they raise federal questions. *See* ECF 41, PgID 1073–77; 28 U.S.C. § 1331. Claim three, which alleges State law false claims violations by "the Primary Plans," does not raise a federal question. ECF 41, PgID 1077–84. And the parties here lack complete diversity of citizenship. *Id.* at 1025 (Relator Angelo is a citizen of New Jersey); *id.* at 1027 (Defendant Allstate NJ Prop. & Cas. Ins. Co. has its principal place of business in New Jersey). Thus, the Court has jurisdiction over claim three based only on supplemental jurisdiction because the claim is "so related to [claims one and two] that they form part of the same case or controversy." 28 U.S.C. § 1367(a); *see* ECF 41, PgID 1034, 1077–86 ("This Court has supplemental jurisdiction over the State-law claims alleged herein pursuant to 28 U.S.C. § 1367(a).") (alterations omitted).

But when "the district court has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction over a claim." 28 U.S.C. § 1367(c)(3); *see Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (quotation omitted). The Court has dismissed claims one and two against all

Defendants. Thus, no claims remain over which the Court has original jurisdiction. The Court will accordingly "decline to exercise supplemental jurisdiction over" the State-law claims. *Id.*

## CONCLUSION

The Court will grant Defendant ISO's motion to dismiss in full. And because the Court has dismissed the conspiracy claim against Defendant ISO, the Court must dismiss the conspiracy claims against the insurer Defendants. With no federal claims remaining, the Court will decline to exercise supplemental jurisdiction over the State claims. The State claims are thus dismissed without prejudice.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant Insurance Services Office, Inc.'s motion to dismiss [89] is **GRANTED**.

**IT IS FURTHER ORDERED** that the conspiracy claims against the insurer Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the remaining State-law claims are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: January 19, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 19, 2023, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager